**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

     **v.**                                 **1:18-CR-344**

**MATTHEW OSUBA,**

          **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

## I.    INTRODUCTION

Defendant Matthew Osuba is charged in a three count indictment with sexual

exploitation of a child in violation of 18 U.S.C. §§ 2251 (a) and (e) (Count 1); distribution

of child pornography in violation of 18 U.S.C. §§2252 A(a)(2)(A), 2252A(b)(1), and

2256(8)(A) (Count 2); and possession of child pornography involving one or more

prepubescent minors and minors who had not attained 12 years of age in violation of 18

U.S.C. §§2252 A(a)(5)(B), 2252A(b)(2), and 2256(8)(A) (Count 3).  He moves to dismiss

the indictment or, alternatively, for a bill of particulars.  Dkt. Nos. 19, 20.  The government

opposes the motions, Dkt. No. 27, and the  defendant has filed a reply. Dkt. # 28.  The

Court has elected to decide the motions without oral argument.

## II.    BACKGROUND

The government asserts that on August 1, 2018, the National Center for Missing

and Exploited Children ("NCMEC") sent a report to the New York State Police that NCMEC received from Witness 1. In the report, Witness 1 stated she was using the social media application Kik to direct message a user named "LightsaberMaster" with the vanity name "Matt O," who was later identified as the defendant. According to the government, Osuba repeatedly spoke with Witness 1 over Kik about his sexual interest in children. Between August 30 and September 1, 2018, Osuba allegedly sent Witness 1 multiple images of child pornography via Kik, including an image that purportedly depicts a prepubescent girl laying on a bed. The government contends that this image depicts a female child who is not wearing any underwear and her legs are spread apart so that her vagina and anus are exposed. The government contends that the child's vagina and anus are the focal point of the image. Osuba also allegedly sent Witness 1 an image depicting the same prepubescent girl with her vagina and anus exposed.

The government contends that the agents obtained a federal search warrant for a residence where Osuba stayed and executed it on September 18, 2018, seizing various pieces of electronic media. Agents also purportedly went to Osuba's former place of employment where they seized a cellphone from him. It is alleged that Osuba waived his *Miranda* rights and made various statements to agents, including that he received and distributed child pornography via Kik. The government contends that a preview of Osuba's cellphone revealed additional child pornography, including an image of a 1 year old girl wearing a dog collar with a finger inserted in her vagina, which Osuba stated he did not remember saving to his cellphone. The government also alleges that agents located a video Osuba produced of himself masturbating near V-1, a then-17-year-old girl. The government maintains that Osuba initially denied masturbating over V-1, but when an

2

agent told Osuba that the agent found the video, Osuba admitted that he took that video

because he was talking to another Kik user and they thought it would be exciting.

According to the government, Osuba stated he made the video sometime in late August or

early September 2018 and claimed he did not consider V-1 to be a victim because of her

age. The government maintains that Osuba told the agents where he made the video.

This video is the basis of the sexual exploitation charge contained in Count 1.  Defense

counsel, who asserts he viewed the video at the FBI field office in Albany, indicates:

> [T]he video runs for about eight to eleven seconds, and shows Mr. Osuba
> masturbating some feet[] away from V-1, the alleged 17 year old victim.
> Throughout the duration of the video recording, V-1 was fast asleep on the
> couch with her face turned towards the backside of the couch. Throughout
> the duration of the video recording, V-1's face, likeness, or other
> distinguishing characteristic, such as a unique birthmark or other
> recognizable feature was never visible.  V-1 was completely oblivious of what
> Mr. Osuba was doing nor did she wake up at any point during the entire eight
> to eleven seconds duration of the video. V-1's face was  never seen in the
> video, nor any part of her skin. V-1 was fully clothed.  No portion of her
> unclothed body was visible anywhere in the video.  V-1 did not participate in
> any way at all, with whatever Mr. Osuba was doing.  Mr. Osuba did not have
> any contact whatsoever with V-1.  V-1 was fast asleep and was totally
> unaware of whatever was occurring in the room.

Def. MOL, at 3.

## III.    DISCUSSION

### a. Dismissal of Counts in the Indictment

Defendant moves to dismiss each count in the indictment, arguing that they are

facially insufficient and the result of inadequate evidence and improper instructions

presented by the government to the grand jury.

#### 1. Dismissal Standard

Federal Rule of Criminal Procedure 12(b)(1) provides: "A party may raise by pretrial

motion any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1)(emphasis added).  It is well settled that an indictment need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c).  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir.1992)("An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events."). Further, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Alfonso,* 143 F.3d 772, 776 (2d Cir.1998) (internal quotation marks omitted). "When the charges in an indictment have stated the elements of the offense and provided even minimal protection against double jeopardy, [the Second Circuit] has repeatedly refused, in the absence of any showing of prejudice, to dismiss charges for lack of specificity." *United States v. Stringer*, 730 F.3d 120, 125 (2d Cir. 2013).  "An indictment does not have to specify evidence or details of how the offense was committed." *United States v. Wey*, 2017 WL 237651, *5 (S.D.N.Y. 2017)(citing *United States v. Coffey*, 361 F. Supp. 2d 102, 111 (E.D.N.Y. 2005)).

## 2.  Count 1

Defendant focuses his arguments primarily on Count 1, which charges:

> In or about September 2018, in Ulster County in the Northern District of New York, and elsewhere, the defendant, MATTHEW OSUBA, did use a minor, that is V-1, a then 17 year old minor child whose identity is known to the grand jury, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and where such visual depictions were actually transmitted using a means and facility of interstate and foreign commerce and in and affecting such commerce, in violation of Title 18, United States Code, Sections 2251(a) and (e).

Indict., Ct. 1, Dkt. No. 9.

This count contains the elements of a Section 2251(a) sexual exploitation offense in that it alleges that defendant used a minor (V-1) to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct where the visual depictions were produced using materials that had been transported in interstate commerce and where the visual depictions were actually transmitted in interstate commerce. *See* 18 U.S.C. §2251(a)("Any person who . . . uses . . . any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed."); *United States v. Valerio*, 765 F. App'x 562,

569, n. 4 (2d Cir. 2019)("Section 2251(a) criminalizes the sexual exploitation of minors for the purpose of producing a visual depiction of such conduct where: (1) the defendant knows or has reason to know that the visual depictions produced therefrom will be transported or transmitted using any means or facility or in or affecting interstate or foreign commerce; (2) the visual depictions were produced or transmitted using materials that have been transported in or affecting interstate or foreign commerce; or (3) such visual depictions are actually transmitted using any means or facility or in or affecting interstate or foreign commerce."); *see also United States v. Davis*, 624 F.3d 508, 514 (2d Cir. 2010)("[W]e agree with the District Court that the first clause of the jurisdictional element of section 2251(a) does not require that the knowledge of interstate transmission be contemporaneous with the substantive offense conduct.").

Moreover, Count 1 fairly informs the defendant of the charge against which he must defend (*i.e.* sexual exploitation of minor to produce a sexually explicit video in violation of 18 U.S.C. § 2251(a)). By alleging the date that the offense allegedly occurred ("In or about September 2018"), and the approximate location of its purported commission ("in Ulster County in the Northern District of New York"), the defendant is able to plead an acquittal or conviction in bar of future prosecutions for the same offense. To the extent that the defendant contends that the precise location of the alleged crime is not apparent from the face of the indictment, that information can be determined by the video which defense counsel has already viewed. This alleviates any concern that the defendant might have to asserting double jeopardy in the future. *See Stavroulakis*, 952 F.2d at 695 ("When an indictment delineates the elements of a charged offense, however concisely, the underlying concerns of proper pleading—notice of the charge to be met and protection

6

against double jeopardy—may be further promoted by a bill of particulars or pre-trial discovery.")(citing *United States v. McLean*, 528 F.2d 1250, 1257 (2d Cir. 1976)).  Thus, the allegations in Count 1 state a facially sufficient 18 U.S.C. § 2251(a) violation.

The defendant argues that the evidence supporting Count 1, the video, is insufficient to support a charge under Sections 2251(a) because Osuba engaged in masturbation a few feet away from V-1; during the video the alleged victim's face, likeness, or other distinguishing characteristics (such as a unique birthmark or other recognizable features) were never visible; V-1 was asleep during the video and therefore was "completely oblivious to what Mr. Osuba was doing;" V-1 was fully clothed with no portion of her unclothed body visible in the video; V-1 did not participate with Osuba as he masturbated; the defendant did not have any physical contact with V-1; and "at no time did V-1 engage in any sexually explicit conduct as defined by statute." Def. MOL, at 3. However, "[i]t is well established that an indictment that is valid on its face may not be dismissed on the ground that it is based on inadequate or insufficient evidence." *United States v. Reynolds*, No. 97-CR-232, 1999 WL 66536, at *3 (D. Conn. Jan. 22, 1999) (collecting cases).  "It is not proper to weigh the sufficiency of the evidence underlying the indictment, unless the Government has already made 'a full proffer of the evidence it intends to present at trial.'" *United States v. Budovsky*, No. 13-CR-368, 2015 WL 5602853, at *3 (S.D.N.Y. Sept. 23, 2015).  "Simply put, the validity of an indictment is tested by its allegations, not by whether the Government can prove its case." *Coffey*, 361 F. Supp. 2d at 111; s*ee* Def. MOL at 9 ("When testing the sufficiency of the charges in an indictment, 'the indictment must be viewed as a whole and the allegations [therein] must

7

be accepted as true at this stage in the proceedings.'")(citations omitted).

The government has not stated that it has made a full proffer of its evidence in support of Count 1.  Thus, the motion can be denied on the ground that Count 1 states a facially sufficient Section 2251(a) charge.   Nevertheless, because the defendant argues that the government must necessarily have provided insufficient evidence, and improper instructions, to the grand jury regarding the sexual exploitation charge, the Court will address the sufficiency of the apparent evidence underlying this charge.

Assuming, *arguendo,* that V-1 was asleep during the entire time of the defendant's alleged conduct, kept her face away from the camera, did not actively participate in the defendant's alleged conduct, and did not engage in any lascivious exhibition of her genitals or pubic area, the government may still be able to prove a violation of 18 U.S.C. § 2251(a).  Section 2251(a) provides in pertinent part that "[a]ny person who ... uses ... any minor to engage in ... any sexually explicit conduct for the purpose of producing any visual depiction of such conduct ... shall be punished as provided under subsection (e)."  18 U.S.C. § 2251(a).  The Court presumes based on the allegations in the indictment ("the defendant . . . did use a minor, that is V-1, a then 17 year old minor child whose identity is known to the grand jury") that the government has evidence other than the subject video that could prove V-1's age at the time of the alleged conduct.  "Sexually explicit conduct" is defined as including the "lascivious exhibition of the genitals or pubic area *of any person*."  18 U.S.C. § 2256(2)(A)(v) (emphasis added).  Under a plain reading of § 2256(2)(A)(v), it not necessary that the displayed genitalia be that of the child.  Here, the defendant's display of his genitals while he masturbated is sufficient evidence supporting this element of the charge.  In determining whether a visual depiction is lascivious, the Second Circuit

8

has cited with approval the factors set forth in *United States v. Dost*, 636 F.Supp. 828 (S.D. Cal.1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir.1987). *See United States v. Rivera*, 546 F.3d 245, 249 (2d Cir. 2008). The "*Dost* factors" include whether the setting of the visual depiction is sexually suggestive and whether the visual depiction is intended or designed to elicit a sexual response in the viewer. Accepting the government's representation that the defendant videotaped himself masturbating because he was communicating with a person on Kik messenger and the two thought it would be "exciting," the government could establish that the visual depiction was sexually suggestive and designed to elicit a sexual response in the viewer. Additionally, some courts have determined that "the question of lasciviousness is not decided by a bright-line test. Instead, the fact finder must make a totality-of-the-circumstances inquiry that can only be informed through the context of a trial." *United States v. Goodale*, 831 F. Supp. 2d 804, 809–10 (D. Vt. 2011). This totality-of-the-circumstances inquiry can ask whether the minor is portrayed as a sexual object. *Id.* (citing *United States v. Johnson*, 639 F.3d 433, 440 (8th Cir. 2011)(explaining that the jury was instructed to consider the six enumerated *Dost* factors plus the additional factor of "whether the picture portrays the minor as a sexual object.")). Here, the government could establish that V-1 was portrayed as a sexual object in the defendant's video of him masturbating.

The fact that V-1 was asleep and did not actively participate in the defendant's conduct does not necessarily mean that defendant did not violate Section 2251(a). *See United States v. Lohse*, 797 F.3d 515, 521-23 (8th Cir. 2015); *United States v. Finley*, 726 F.3d 483, 494-95 (3d Cir. 2013). In *Lohse*, the Eighth Circuit addressed whether the

9

District Court erred in denying the defendant's motion for judgment of acquittal on a conviction for producing child pornography in violation of 18 U.S.C. § 2251(a) and (e). *See Lohse*, F.3d at 521-23. The conviction was based upon pictures showing the defendant, Lohse, naked and in a position so that his penis was on or near the face of K.S., a sleeping three-year-old female. *Id.*, at 518. The Eighth Circuit rejected the defendant's argument that the government failed to prove that K.S. was "use[d] to engage in" sexually explicit conduct under §2251(a) because the evidence did not demonstrate that K.S. was an active participant in the sexual conduct and because Lohse did not engage in active sexual conduct with K.S. *Id.* at 521-23. In rejecting this argument, the Eighth Circuit wrote:

> Lohse . . . did not object to the jury instruction explaining that K.S. was "used" if she was photographed or videotaped. Nor did he request that the term "engage in" be defined for the jury. Although he has maintained throughout that the evidence did not support a finding that the conduct was sexually explicit, he claims for the first time on appeal that the evidence was insufficient to prove that K.S. was used to engage in it. If Lohse's argument is that the district court failed to properly instruct the jury, we find no plain error in the instructions. *See United States v. Fadl*, 498 F.3d 862, 866 (8th Cir. 2007) ("[T]he 'use' component 'is fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography.'" (quoting *United States v. Sirois*, 87 F.3d 34, 41 (2d Cir.1996))). If [Lohse's] argument is that the evidence was insufficient because K.S. was merely present when Lohse himself engaged in sexually explicit conduct, we disagree with Lohse's characterization of the images as "a simple display of adult genitals around a sleeping minor." Appellant's Reply Br. 2. We agree with the district court that "a jury might find that [K.S.'s] role in the nine photographs was that of an inanimate body for Lohse to act upon in exhibiting his genitals" and that "a reasonable jury could conclude that Lohse quite literally used K.S. as a sexual object in orchestrating the nine photographs." D. Ct. Order of Jan. 21, 2014, at 11. This is not a case of mere presence, nor could the images be fairly described as "innocent family photos, clinical depictions, or works of art." *Johnson*, 639 F.3d at 439.

10

For example, government's exhibit 5 depicts K.S. wearing pajamas and sleeping on a bed. Lohse is naked and straddling the child's head, with his left foot on the floor and his right leg on the bed. Lohse has placed his flaccid penis near the child's cheek or mouth, and he is pulling or holding her hair with his left hand. Government's exhibit 8 again depicts K.S. wearing pajamas and sleeping on a bed. Lohse is naked and almost straddling the child's head. He is facing away from the child and has pushed his penis and scrotum toward his anus with his left hand. His left hand is also pressed against K.S.'s forehead, with his penis placed near K.S.'s left eye. These two images and the other seven in the series constitute evidence from which a reasonable jury could find present three of the factors set forth in the jury instructions, two of which were enumerated in *Dost*: the setting of the images was sexually suggestive; the images were intended to elicit a sexual response in the viewer; and K.S. was portrayed as a sexual object. The evidence was sufficient to allow a reasonable jury to convict Lohse of production of child pornography, as charged in count 1, and thus the district court properly denied Lohse's motion for judgment of acquittal.

*Id.*, at 521–22.

Here, like in *Lohse*, the government could establish that Osuba used V-1 as an inanimate body to act upon in exhibiting his genitals and masturbating for the video camera, and that V-1 was portrayed as the sexual object of the video. Contrary to the defendant's argument, *Lohse* is not distinguishable from the instant case. Inasmuch as the Eighth Circuit did not base its interpretation of Section 2251(a)'s "use" element on the fact that there was some incidental physical contact between Lohse and K.S., the absence of physical contact between Osuba and V-1 in the video does not separate this case from the primary holding of *Lohse*. On the basis of the video, a Section 2251(a) "use" violation can be established even though V-1 was unaware of, and did not actively participate in, Osuba's alleged sexually explicit conduct. *See id.*

In *Finley*, the Third Circuit rejected Defendant Finley's contention that the District Court erred in instructing the jury that a sleeping child can "engage in" sexually explicit

11

conduct within the context of §2251(a).  *Finley*, 726 F.3d at 494-95.  The Third Circuit
wrote:

> Section 2251(a) pertains to "[a]ny person who employs, uses, persuades,
> induces, entices, or coerces any minor to *engage in* ... any sexually explicit
> conduct." (emphasis added). . . .  Finley's focus on the word "engage" is too
> narrow.  Section 2251(a) pertains to a person who "*employs, uses,
> persuades, induces, entices, or coerces* any minor to engage in ... any
> sexually explicit conduct." (emphasis added).  Congress's utilization of these
> verbs, especially "uses," indicates that active involvement on the part of a
> minor is not essential for a conviction under § 2251(a).  For example, a
> perpetrator can "use" a minor to engage in sexually explicit conduct without
> the minor's conscious or active participation.
>
> Even if the plain language of the statute could be interpreted to support
> Finley's position, the result of such an interpretation would be absurd and
> against the obvious policy of the statute. In the only published opinion
> addressing this issue, the U.S. District Court for the Southern District of New
> York held that "[a]s a matter both of common sense and public policy, the
> statute must be construed to protect all children, including those who are
> unaware of what they are doing or what they are being subjected to, whether
> because they are sleeping or under the influence of drugs or alcohol or
> simply because of their age." *United States v. Levy*, 594 F. Supp.2d 427,
> 443 (S.D.N.Y. 2009).  It would be absurd to suppose that Congress intended
> the statute to protect children actively involved in sexually explicit conduct,
> but not protect children who are passively involved in sexually explicit
> conduct while sleeping, when they are considerably more vulnerable.

*Id.*  The Third Circuit also noted that "[t]wo of our sister courts of appeals, without

specifically addressing the issue, have, in published opinions, affirmed convictions under §

2251(a) where the material in question involved sleeping children." *Id.*, at 495, n. 3 (citing

*United States v. Vowell*, 516 F.3d 503 (6th Cir. 2008); *United States v. Wolf*, 890 F.2d 241

(10th Cir.1989)).  Thus, the Third Circuit concluded that "on the basis of statutory text,

public policy, and persuasive case law, we hold that the District Court did not err by

instructing the jury that a sleeping child can 'engage in' sexually explicit conduct within the

context of § 2251(a)." *Id.* at 495.  Here, even assuming that the evidence demonstrates

that V-1 was constantly sleeping while Osuba exhibited his penis for the camera and

masturbated, the government can establish a Section 2251(a) violation based on Osuba's

use of V-1 to engage in sexually explicit conduct even without V-1's conscious or active

participation. *See id.*

Osuba's reliance on *Sirois* does not change this conclusion. In *Sirois*, the Second

Circuit held that the "use" element of § 2251 is "fully satisfied ... if a child is photographed

in order to create pornography," upholding the District Court's refusal to define the terms

"employing, using, or persuading" in § 2251(a) as requiring a defendant to act to

manipulate or take advantage of a minor. *Sirois*, 87 F.3d at 41. In reaching this

conclusion, the Second Circuit wrote:

> Sirois claims that the government urged the jury to interpret the word "use" too
> broadly. In its summation, the prosecution analogized [the two minors involved in
> the sexually explicit pictures] to a vase being photographed; each was "used" to
> create a visual depiction. Sirois, instead, wanted to define "use" more narrowly, to
> mean "take some acts which manipulate or take advantage of a minor." The
> defense argues that, at the very least, any "use" by Sirois must have occurred prior
> to the photographed sexual activity, since the other activities proscribed by §
> 2251(a)—enticing, inducing, persuading, coercing—must all happen before the
> sexual activity.
>
> Sirois also argues that some clarificatory instruction was warranted,
> especially in view of the recent debate over the meaning of the word "use" in
> 18 U.S.C. § 924(c), which prohibits "use" of a firearm in certain
> circumstances. Sirois points to *Bailey v. United States*, 516 U.S. 137, [141],
> 116 S. Ct. 501, 505, 133 L. Ed.2d 472 (1995), and the Supreme Court
> holding that under § 924(c), "use" of a firearm entails active employment, not
> merely possession, of a gun. *See also Smith v. United States*, 508 U.S. 223
> 113 S. Ct. 2050, 124 L.Ed.2d 138 (1993) (ruling that bartering a gun for
> drugs constitutes "use" of a firearm under § 924(c)).
>
> Although the word "use" may pose "interpretational difficulties" in certain contexts,
> *id.*, we do not believe that it creates problems here. As the Supreme Court pointed
> out in *Bailey*, the "ordinary or natural" meaning of the word "use" can be variously
> stated as "[t]o convert to one's service," "to employ," "to avail oneself of," and "to

carry out a purpose or action by means of." 516 U.S. at 143, 116 S. Ct. at 506 (quoting *Smith*, 508 U.S. at 229, 113 S. Ct. at 2050) (internal quotation marks omitted). There is undoubtedly an active component to the notion of "use." But that component is fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography.

....

Although some of the other actions listed in § 2251(a), such as "enticing, inducing, and persuading" will most often occur before the depicted activity, that is not so of the word "use."....

In short, we believe that the meaning of "use" in § 2251(a) is within the typical juror's everyday understanding of the word.

*Sirois*, 87 F.3d at 41.

Here, it possible that a jury could conclude that Osuba used V-1's presence on the couch to produce a visual depiction that was sexually suggestive, designed to elicit a sexual response in the viewer, and that portrayed V-1 as the sexual object of the video. This satisfies the broad interpretation of the term "use" in Section 2251(a). *See id.; Lohse*, F.3d at  521-23; *Finley*, 726 F.3d at 494-95; *see also United States v. Wright*, 774 F.3d 1085, 1090 (6th Cir. 2014)(adopting the Second Circuit's interpretation of "use" in holding that this element is "fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography.") (quoting *Sirois*, 87 F.3d at 41); *United States v. Fadl*, 498 F.3d 862, 866 (8th Cir. 2007)("Fadl argues first that he did not 'use' a minor to engage in sexual conduct, as that term is employed in the statute, because he had only filmed the minors and did not initiate or solicit their sexual conduct. We find this argument unpersuasive, for we agree with the Court of Appeals for the Second Circuit that the 'use' component 'is fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography.'")(quoting

14

*Sirois*, 87 F.3d at 41); *United States v. Vanhorn*, 740 F.3d 1166, 1168 (8th Cir. 2014) (same); *see e.g., Ortiz–Graulau v. United States*, 756 F.3d 12, 19 (1st Cir. 2015)("In enacting 18 U.S.C. § 2251, 'Congress intended a broad ban on the production of child pornography and aimed to prohibit the varied means by which an individual might actively create it.' ... The inclusion of multiple similar verbs in the statute illustrates Congress'[s] intent to reach as broad as possible a range of ways that a defendant might actively be involved in the production of sexually explicit depictions of minors.")(quoting *United States v. Poulin*, 631 F.3d 17, 23 (1st Cir. 2011)).

There is also no merit to Osuba's argument that the government cannot prove beyond a reasonable doubt that his alleged conduct underlying Count 1 was criminal. Assuming, as the defendant argues, that the New York State Office of Children and Family Services issued an "unfounded" report of suspected child abuse or maltreatment based on the conduct underlying Count 1, this determination is of no moment on this motion. The Office of Children and Family Services' report was based upon the investigation of the defendant's local county Child Protective Services ("CPS") office. *See* Def. Ex. 2. A county CPS investigator has significantly less investigative capabilities then the federal government, and there is no indication that the CPS investigator was aware of the video that defendant took of himself masturbating a few feet away from V-1. The "unfounded" report does not establish that the government cannot prove that the defendant violated Section 2251(a). Moreover, the CPS investigator's determination cannot serve as a proper substitute for a jury's determination.

For these reasons, Osuba's motion to dismiss Count 1 for lack of sufficient

evidence is denied.

### 3. Counts 2 & 3

Defendant asserts that even though Counts 2 and 3 "do contain a little bit more factual allegations then that contained in Count One, Counts Two and Three nevertheless failed to provide sufficient factual allegations to support all the elements of the offense[s] charged." Def. MOL at 14. The Court disagrees.

Count 2 alleges:

Between on or about August 30, 2018 and on or about September 1, 2018, in Ulster County in the Northern District of New York, and elsewhere, the defendant, MATTHEW OSUBA, did knowingly distribute and attempt to distribute child pornography using a means and facility of interstate and foreign commerce, shipped and transported in and affecting such commerce by any means, including by computer, in that the defendant, using the Internet or cellular service, used a messaging application to send one or more graphic image files depicting a minor or minors engaged in sexually explicit conduct to another user, in violation of Title 18, United States Code, Sections 2252A(a)(2)(A), 2252A(b)(1), and 2256(8)(A).

Indict., Ct. 2, Dkt. No. 9.

As stated above, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117. Count 2 contains the elements of a violation of Sections 2252A(a)(2)(A), 2252A(b)(1), and 2256(8)(A), and fairly informs the defendant of the charge against which he must defend. Moreover, the government asserts that Count 2 "only charges images that the defendant distributed via Kik between August 30 and September 1, 2018. Those images are described in the complaint and were made available for defense counsel's review. The government will

16

provide the defendant with redacted copies of his Kik chats with Witness 1 during that
timeframe in which he distributed child pornography." Gov. MOL at 7-8. This pretrial
discovery, in combination with the allegations in Count 2, enables the defendant to plead
an acquittal or conviction in bar of future prosecutions for the same offense. *See
Stavroulakis*, 952 F.2d at 695. Accordingly, there is no basis to dismiss Count 2 for legal
insufficiency.

> Count 3 alleges:
>
> On or about September 18, 2018, in Ulster County in the Northern District of
> New York, the defendant, MATTHEW OSUBA, did knowingly possess
> material that contained one or more images of child pornography that had
> been shipped and transported using a means and facility of interstate and
> foreign commerce, and in and affecting such commerce by any means,
> including by computer, and that was produced using materials that had been
> shipped and transported in and affecting such commerce by any means, that
> is a Samsung cellphone, model SMJJ337A, serial number R28K51 0ZXFH,
> manufactured outside the state of New York, which contained numerous
> graphic image and video files of one or more minors engaged in sexually
> explicit conduct, in violation of Title 18, United States Code, Sections
> 2252A(a)(5)(B), 2252A(b)(2), and 2256(8)(A). This violation involved images
> of child pornography involving one or more prepubescent minors and minors
> who had not attained 12 years of age, in violation Title 18, United States
> Code, Section 2252A(b)(2).

Indict., Ct. 3, Dkt. No. 9.

This count contains the elements of a violation of Sections 2252A(a)(5)(B),
2252A(b)(2), and 2256(8)(A), and fairly informs the defendant of the charge against which
he must defend. Moreover, the government asserts that "Count 3 charges the defendant
with possessing child pornography on his cellphone on September 18, 2018. The child
pornography found on the defendant's cellphone was also made available for defense
counsel's review." Gov. MOL, at 9. This pretrial discovery, in combination with the
allegations in Count 3, enables the defendant to plead an acquittal or conviction in bar of

future prosecutions for the same offense.  *See Stavroulakis*, 952 F.2d at 695.

Accordingly, the Court finds no basis to dismiss Count 3 for legal insufficiency.

### 4. Grand Jury Presentation

Based on his contention that the evidence from the video is insufficient to support

the charge in Count 1, the defendant asserts that the government must necessarily have

failed to present sufficient evidence to the grand jury and/or improperly instructed the

grand jury on the statutory elements of a violation of 18 U.S.C. §§ 2251(a) and (e).  The

defendant argues that Count 1 "should be dismissed for improper presentation of

evidence and improper grand jury instructions," and Counts 2 and 3 "should likewise be

dismissed because, even though those counts contain certain factual allegations, it [*sic*]

nonetheless lacks sufficient factual allegations to support all of the elements of the

offenses charged." Def. MOL at 19.  In the alternative to dismissal, the defendant requests

that the Court order the government to produce to the Court and to defense counsel a

copy of all transcripts related to the grand jury proceedings in this case.  The defendant's

motion in this regard must be denied.

"[A] presumption of regularity attaches to any indictment valid on its face and

returned by a duly constituted grand jury." *United States v. Stern*, No. 03 CR. 81 (MBM),

2003 WL 22743897, at *3 (S.D.N.Y. Nov. 20, 2003)(citing *Costello v. United States*, 350

U.S. 359, 363 (1956)).  "[A]bsent any indication of government impropriety that would

defeat that presumption, . . .  this  court has no roving commission to inspect grand jury

minutes, and will not fashion one." *Id.*  (citations omitted).  Moreover, "a review of grand

jury minutes is rarely permitted without specific factual allegations of government

misconduct." *United States v. Smith*, 105 F. Supp. 3d 255, 260 (W.D.N.Y. 2015) (citing

18

*United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990)).

For the reasons discussed above, the indictment in this matter is valid on its face in all respects. Further, and also for reasons discussed above, there appears to be sufficient evidence for the grand jury to return an indictment on each of the counts alleged in the indictment. Thus, there is no basis for the defendant's assertion of impropriety before the grand jury and, consequently, no basis to dismiss the indictment, for the Court to review the grand jury transcripts, or order production of the grand jury transcripts to defense counsel.

### b. Motion for a Bill of Particulars (Dkt. # 20)

The defendant seeks a bill of particulars requiring the government to particularize the allegations and the government's evidence for each count.[1] Under Federal Rule of Criminal Procedure 7(f), a district court may require the government to file a bill of particulars when it is necessary to explain the nature of the charges against the defendant, to allow him to prepare for trial, and to prevent unfair surprise. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)(*per curiam*). The decision to grant a request for a bill of particulars is within the Court's discretion. *Id.* "Courts are only required to grant a bill of particulars 'where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v.*

---

[1]Regarding Count 1, the defendant seeks: a description of the visual depiction; the location where the visual depiction was produced; an explanation of how the visual depiction fits the definition of sexually explicit conduct; and an explanation of how the government has identified the victim. With respect to Counts 2 and 3, the defendant seeks: an identification of all visual depictions involved; an explanation of how the visual depictions qualify as sexually explicit conduct; proof that the defendant knowingly distributed child pornography using a messaging application; proof that the defendant knowingly possessed child pornography; whether the visual depiction is an actual minor engaged in sexually explicit conduct; and an explanation of how the government determined that the visual depictions involved in Count 3 include images of prepubescent children.

*Raniere*, No. 18-CR-2041 (NGG/VMS), 2019 WL 1903365, at *25 (E.D.N.Y. Apr. 29, 2019)(quoting *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (citation and quotation marks omitted)). "This standard turns on whether the information sought is necessary, not whether it is helpful." *Id.* (citation and quotation marks omitted). "In making this determination, 'the court must examine the totality of the information [already] available to the defendant—through the indictment, affirmations, and general pre-trial discovery.'" *Id.* (quoting *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000) and citing *Bortnovsky*, 820 F.2d at 574 ("Generally, if the information sought by [the] defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required.")).   A bill of particulars is not meant to serve as "a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001); see *United States v. Kang*, No. 04-CR-87 (ILG), 2006 WL 208882, at *1 (E.D.N.Y. Jan. 25, 2006)(A bill of particulars is not meant to enable a defendant to "obtain a preview of ... the government's evidence before trial," or "to learn the legal theory upon which the government will proceed.").  The defendant bears the burden of showing that the information sought is necessary and that he will be prejudiced without it. *Raniere*, 2019 WL 1903365, at *25  (citation quotation marks omitted).

As evident from the defendant's memorandum of law, defense counsel has had the opportunity to review the video that forms the basis of the charge in Count 1.  Moreover, the government asserts that the images that form the bases of the charges in Counts 2 and 3 were made available for defense counsel's review.  The Court accepts the government's representation that this involved all of the images forming the bases of

20

Counts 2 and 3.   Further, the government contends that it will provide the defendant with redacted copies of his Kik chats with Witness 1 during the timeframe in which defendant purportedly distributed child pornography as alleged in Count 2.

The government's provision of the opportunity to review this evidence, and the expected provision of redacted copies of the of the Kik chats, is sufficient to explain the nature of the charges against the defendant, to allow the defendant to prepare for trial, and to prevent unfair surprise.  Based upon the allegations in the indictment, the discovery already provided, and the discovery that will be provided, the defendant fails to demonstrate that he is unable to determine the nature of the charges leveled against him. Thus, his motion for a bill of particulars is denied.

## IV.    CONCLUSION

For the reasons set forth above, the defendant's motions to dismiss the indictment, Dkt. No. 19, and for a bill of particulars, Dkt. No. 20, are **DENIED**.

**IT IS SO ORDERED.**

Dated:July 19, 2019

Thomas J. McAvoy
Senior, U.S. District Judge

21